**Anne D. Foster, OSB No. 993152**
E-Mail: afoster@dunncarney.com
Dunn Carney Allen Higgins & Tongue LLP
851 S.W. Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324

**Jimmy W. Go, OSB No. 812400**
E-Mail: jimmygo@lawpdx.com
Jimmy W. Go, PC
851 S.W. Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-8654
Facsimile: (503) 224-7324

   Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SUCHART ("MAHA") TREEMETH** and **NUALJIRA ("NUAN") TREEMETH**, | No. _____ |
|    Plaintiffs, | |
| v. | |
| ***TYPHOON!*, INC.**, an Oregon corporation; ***TYPHOON!*, ON BROADWAY, LLC**, an Oregon limited liability company; ***TYPHOON! BEAVERTON, LLC**, an Oregon limited liability company; **BONGOJ ("BO") LOHASAWAT KLINE**, individually; and **BONJOG ("BO") LOHASAWAT KLINE** as Personal Representative for the Estate of Stephen Edward Kline (deceased), | **COMPLAINT** National Origin Discrimination; Aiding and Abetting; Wage and Hour Violations; Breach of Contract; Unjust Enrichment; Forced Labor; Involuntary Servitude; Intentional Infliction of Emotional Distress Demand for Jury Trial |
|    Defendants. | |

**INTRODUCTION**

  1. Plaintiffs hereby assert claims for (a) unlawful national origin and race

discrimination in violation of 42 U.S.C. § 1981, Title VII (42 U.S.C. § 2000e et seq.), and ORS

659A.030(1); (b) aiding and abetting in violation of ORS 659A.030(1)(g); (c) unpaid wages in violation of 29 U.S.C. § 207(a)(1) and ORS 653.261; (d) breach of contract; (e) unjust enrichment; (f) forced labor in violation of 18 U.S.C. § 1589(a)(3); (g) involuntary servitude in violation of ORS 163.263(a); and (h) intentional infliction of emotional distress.

## JURISDICTION

2.      This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. § 2000e (Title VII), including supplemental jurisdiction over Plaintiffs' state law claims.

## VENUE

3.      Venue is proper as the acts giving rise to this action occurred within the territorial jurisdiction of the U.S. District Court of Oregon.

## PARTIES

4.      Plaintiffs Suchart ("Maha") Treemeth and Nualjira ("Nuan") Treemeth ("the Treemeths") are from Thailand and citizens of Thailand. Plaintiffs came to the United States under temporary E-2 visas in 1998 and became lawful permanent residents of the United States with accompanying "green card" status on April 23, 2010. Both plaintiffs are current residents within the state of Oregon.

5.      Defendant *Typhoon!, Inc.* is an Oregon corporation which, at all material times herein, was in the Thai restaurant business in Oregon and Washington, and employed more than 200 employees.

6.      Defendant *Typhoon! on Broadway, LLC* is an Oregon limited liability company which, at all material times herein, was in the Thai restaurant business in Portland, Oregon, and employed 15 or more employees in the State of Oregon.

7.      Defendant *Typhoon! Beaverton, LLC* is an Oregon limited liability company which, at all material times herein, was in the Thai restaurant business in Beaverton, Oregon, and employed 15 or more employees in the State of Oregon.

8.      Collectively and separately, these three *Typhoon!* restaurant defendants are referred to hereinafter as *Typhoon!*.

9.      Defendant and Aider and Abettor Bongoj ("Bo") Lohasawat Kline served in various capacities, including founder, owner, President, and Executive Chef of *Typhoon!*. Bo Kline was personally involved in hiring and in the operation of the *Typhoon!* businesses.

10.     Defendant and Aider and Abettor Stephen ("Steve") Edward Kline served in various executive and managerial capacities, including co-founder, Corporate Officer, Managing Director, Secretary-Treasurer, and General Manager of *Typhoon!*. Steve Kline was personally involved in directing the recruiting, hiring, and day-to-day operation of the businesses. Steve Kline died on August 25, 2011.

11.     Defendant Bo Kline is the duly appointed personal representative for the Estate of Stephen Edward Kline.

## RELEVANT FACTS

12.     Plaintiffs Maha and Nuan Treemeth were born and raised in the nation of Thailand. Plaintiffs were in Thailand when Bo and Steve Kline hired them to work as Thai specialty cooks for *Typhoon!*.

13.     Maha Treemeth, then age 32, came to the United States and began working for the defendants in January 1998; Nuan Treemeth, then age 25, followed and began working for the defendants in May 1998. Both plaintiffs worked continuously for the defendants for 12 years until Maha and Nuan Treemeth were wrongfully discharged in 2010.

14.     Maha Treemeth and Nuan Treemeth married in 2000, purchased their home in 2003, had their first child in 2003, and their second child in 2005. By virtue of their birth within the United States, both Treemeth children are U.S. citizens. The defendants were aware of each of these events.

15.     Bo Kline is also culturally Thai. She was born and raised in the nation of Thailand.

16.     A special relationship existed between the defendants as Thai employers and the plaintiffs as Thai employees.

17.     Defendants Steve Kline, Bo Kline, and *Typhoon!* fostered, knew of, and agreed to this special relationship with the plaintiffs.

18.     The United States Department of State issues a type of nonimmigrant visa known as an E-2 Treaty Investor visa. The E-2 visa allows a citizen of a country with which the United States maintains bilateral treaties of commerce and navigation to be admitted to the United States when investing a substantial amount of capital in a U.S. business. Certain employees of a treaty investor can be eligible for E-2 visa status if (a) the employee serves the company in an executive or supervisory capacity or (b) the employee is "essentially skilled" with special qualifications that are essential to the efficient operation and success of the E-2 enterprise in the United States.

19.     The E-2 essential employee visa is for specialists with unique expertise and specialized skills, not ordinary-skilled or unskilled workers. E-2 is not intended for minimum wage jobs or as a means of securing adequate help at less than the prevailing wage standards for jobs of comparable complexity.

20.     The E-2 visa is a temporary visa. Admission into the United States as an E-2 employee is allowed for a period of up to two years. Extensions in increments of up to two years are allowed, provided the E-2 employer demonstrates continuing need and essentiality of the skills and expertise in the area of the E-2 employee's area of specialization.

21.     U.S. immigration law actually allows E-2 employees like Plaintiffs to pursue other visa options to remain in the United States and (a) to change U.S. employers, (b) to change to other nonimmigrant visa status (*e.g.:* 8 CFR 248), and/or (c) to apply for adjustment from temporary to permanent visa status (*e.g.:* INA § 245 and 8 CFR 245).

22.     Thailand and the United States maintain bilateral treaties of commerce and navigation, as such Thailand is qualified as a treaty country for the purposes of the E-2 visa.

23.     Bo and Steve Kline co-founded *Typhoon!* and opened their first restaurant location in Northwest Portland, Oregon in 1995 and brought Thai nationals to work for *Typhoon!* as E-2 visa employees.

24.     Maha Treemeth was the defendants' first Thai E-2 essential employee. Plaintiffs were the defendants' longest tenured Thai E-2 essential employees. When both plaintiffs started in 1998, Bo and Steve Kline had one *Typhoon!* restaurant.

25.     Defendants opened their second *Typhoon!* location in downtown Portland in August 1998. Defendants eventually expanded *Typhoon!* to locations in Beaverton, Gresham, Bend, and West Linn, Oregon, as well as in Redmond, Seattle, and Issaquah, Washington. Over the course of this expansion, Defendants hired over 100 Thai nationals as E-2 essentially-skilled employees to work as Thai specialty cooks. During this expansion, Defendants depended on as many as 50 or more Thai E-2 visa workers working at the same time, with four to seven Thai E-2 visa workers at each *Typhoon!* location.

**Thai Labor Law for Thai Nationals Hired in Thailand to Work Overseas**

26.    The Thai Ministry of Labor's Overseas Employment Administration Office provides guidance regarding the overseas employment of Thai workers. Foreign employers who wish to hire a Thai national in Thailand to work abroad are required to provide an employment contract for the first year of employment.

27.    Under Thai labor law, this one-year contract must contain four basic elements as added assurance that the Thai worker (a) will be paid, (b) will have accommodations, (c) will have return transportation back to Thailand when the temporary job assignment is done, and (d) will have an initial one-year guaranteed contract independent of any future contracts that may be negotiated between the employer and the employee.

**Mandatory Employment Contracts for *Typhoon!*'s Thai E-2 Visa Workers Only**

28.    Defendants Steve and Bo Kline required each plaintiff to sign (a) an initial *Employment Agreement* in 1998, (b) an *Alien Resident Agreement* in February 2001, and (c) multiple *Employment Agreements for Employees on E-2 Visas* between 2005 and 2009.

29.    Instead of adhering to the requirements set forth by the Thai Labor Ministry, the employment contracts that Defendants required Plaintiffs and other Thai E-2 visa workers to sign were mandatory, non-negotiable, and enforceable against Plaintiffs beyond the first year of employment.

30.    Defendants' U.S. citizen and permanent resident workers were not required to sign any employment contracts and were not subjected to the same terms and conditions of employment in these contracts as Thai E-2 visa workers.

**Alien Resident Agreements in 2001**

31.    On September 19, 2000, with the assistance of Defendants and Defendants' immigration lawyer, Plaintiffs qualified for and filed their I-485 immigrant visa applications to adjust from temporary E-2 to lawful permanent resident ("green card") status. Plaintiffs filed their I-485 applications with the U.S. Citizenship and Immigration Services (USCIS), then known as the Immigration and Naturalization Service (INS).

32.    Defendants promised to maintain communication with the lawyers and to keep Plaintiffs informed of the status of Plaintiffs' immigration filings. Plaintiffs relied on Defendants and relied on Defendants' promise.

33.    On February 4, 2001, nearly five months after Plaintiffs had completed and filed their green card applications, Defendants insisted that Plaintiffs sign separate *Alien Resident Agreements* in exchange for Defendants' purported agreement to help the plaintiffs obtain their green cards.

34.    Defendants gave Plaintiffs five days to sign their respective *Alien Resident Agreement*. Defendants also told Plaintiffs that if Plaintiffs did not sign, Defendants would *assume the Treemeths prefer to have their green card applications cancelled* and Defendants would instruct the immigration lawyer to do so immediately.

35.    Under the terms in each *Alien Resident Agreement*, Plaintiffs had to agree to work for *Typhoon!* in any capacity deemed appropriate by *Typhoon!* for a period of five years after receiving their green cards. Should either or both Plaintiffs resign from *Typhoon!* within five years of obtaining their green cards, the agreements required Plaintiffs to pay *Typhoon!* three times an unspecified amount in attorney fees and costs, plus an unspecified amount for *Typhoon!* to recruit and train Plaintiffs' replacements.

36.    Maha and Nuan Treemeth declined to sign their respective *Alien Resident Agreement.*

37.    Shortly thereafter, Defendants, through Steve Kline, told the immigration lawyer to revoke the prior I-140 immigrant worker petition that Defendants had filed for Maha Treemeth in June 2000. This I-140 petition is what allowed Maha Treemeth and Nuan Treemeth (as an accompanying spouse) to file their I-485 green card applications with the INS in September 2000.

38.    After contacts from Defendants' lawyer, the INS revoked Defendants' I-140 for Maha Treemeth on March 23, 2001. However, because the I-140 was revoked more than 180 days from the date that INS received Plaintiffs' I-485 green card applications, it was not effective in cancelling Plaintiffs' I-485 applications because of Section 204(j) of the Immigration and Nationality Act (INA).

39.    Between 2001 and 2005, legacy INS and the USCIS continued to hold the Treemeths' green card applications in active status by sending follow-up notices in 2001, 2002, and 2003 to the immigration lawyer asking Plaintiffs to take action on their still pending green card applications. The USCIS also sent a request for evidence in 2004 asking for proof that Maha Treemeth was still working or had a job offer to work as a Thai cook.

40.    Each time, Defendants told Plaintiffs not to respond to the INS and USCIS notices because Plaintiffs' green card applications were already "cancelled." In reliance upon Defendants' representations, Plaintiffs did not respond.

41.    However, immediately following each INS and USCIS notice, Defendants, through Steve Kline and Defendants' lawyer, contacted and informed the INS and USCIS not to

proceed with the Plaintiffs' green card applications. Defendants' actions were done without the knowledge or consent of, or notice to, the plaintiffs.

42.    In 2005, the USCIS denied both plaintiffs' I-485 applications finding that the applications had been abandoned.

**Employment Contract Renewals between 2005 and 2008**

43.    In "cancelling" Plaintiffs' I-485 green card applications, Defendants forced Maha and Nuan Treemeth to remain engaged in service for *Typhoon!* under temporary E-2 visa status and for no other U.S. employers as a condition for remaining in the United States with their two U.S.-born children.

44.    Plaintiffs had to keep reapplying for extensions of their temporary E-2 status every one to two years; use personal vacation time and incur the expense of flying back to Thailand to renew their E-2 visas with the U.S. Embassy in Bangkok; and bear unnecessary risk of being denied an E-2 extension, becoming ineligible to reenter the United States, and becoming separated from their spouse and two children back in the United States.

45.    In 2005, Defendants replaced the initial contracts Plaintiffs signed in 1998 by requiring the plaintiffs to sign and work under contract extensions at all times. The duration for each contract extension generally coincided with the expiration date for each corresponding E-2 extension.

46.    Defendants required Plaintiffs to sign employment contracts that were non-negotiable and one-sided. These contracts included noncompetition covenants that were not compliant with applicable and controlling Oregon law. These contracts were for wages far below the going rate.

47.     These contracts also included clauses relating to intellectual property in the form of recipes that were not protected by controlling law.

48.     These employment contracts contained a number of unfair, onerous, and unlawful clauses that did not arise out of Plaintiffs' immigration status.

49.     Defendants presented Maha Treemeth with three contract extensions for signature, which he signed on April 2005, November 2007, and September 2008. The expiration date for his 2008 contract extension coincided with his E-2 expiration on August 26, 2010.

50.     Defendants also presented Nuan Treemeth with three contract extensions for signature. She signed her first extension on March 2005 and second extension on November 2007.

51.     In May 2009, Defendants presented Nuan Treemeth with her third contract extension to coincide with the expiration of her E-2 status on May 20, 2010. Before signing this May 2009 contract, Plaintiffs sought independent legal immigration advice to explore other U.S. visa options that would allow them to remain in the United States with their two U.S.-born children (then ages five and three years).

52.     Nuan Treemeth's independent immigration lawyer advised her not to sign her latest contract because the contract was not required under U.S. immigration or Thai labor law, notwithstanding Defendants Steve and Bo Kline's continuing claims to the contrary. Further investigation led to the discovery that Plaintiffs' green card applications were denied as abandoned in 2005, instead of "cancelled" in 2001 as Defendants had repeatedly claimed.

53.     In July 2009, Plaintiffs filed motions to reopen the denial of their I-485 green card applications based, in part, on Defendants' systemic abuse and misinformation to hinder and prevent Plaintiffs from obtaining green card status.

54.    In September 2009, the USCIS reopened and restored Plaintiffs' green card applications to pending status.

55.    On April 23, 2010, the USCIS approved Maha and Nuan Treemeth's I-485 applications, and the couple became lawful permanent residents of the United States with accompanying "green card" status.

56.    Between 2009 and 2010, the plaintiffs incurred a significant legal expense to revitalize their green card applications. After a 10-year delay Plaintiffs were allowed to remain and work legally for Defendants or for any employer within the United States.

57.    Defendants discharged Nuan and Maha Treemeth for not signing contract renewals they erroneously claimed were required by U.S. and Thai law. Defendants fired Nuan on May 20, 2010. Defendants fired Maha on August 26, 2010.

58.    From 1998 until the end of their employment with Defendants in 2010, Nuan and Maha Treemeth each worked an average of 59.5 hours per week, or 19.5 hours of overtime each week.

59.    At all material times, Plaintiffs Nuan and Maha Treemeth worked as E-2 Thai Specialty Cooks with other Thai E-2 visa workers under the direct supervision of Defendant Bo Kline as executive chef. As the immediate and direct supervisor to all E-2 cooks, Bo Kline spoke directly with the kitchen. Defendants Bo Kline and Steve Kline also delegated and related their instructions and messages to the kitchen staff through *Typhoon!*'s restaurant management team.

60.    At various times, Plaintiffs were given additional job titles of "lead cook" and/or "kitchen manager." The added job titles did not change the primary nature of Plaintiffs' job duties: spending 95% or more of the time preparing sauces and cooking Thai dishes for

Defendants' restaurant and catering businesses. Neither Plaintiff was ever given ultimate control or responsibility over kitchen operations or managerial authorities to hire, manage, or fire other cooks or kitchen staff.

61.    During their 12 years with Defendants, Nuan and Maha Treemeth were never paid any overtime compensation.

62.    In August 2004, the U.S. Department of Labor issued an order finding that Defendants' E-2 chefs were non-exempt employees, and ordered *Typhoon!* to pay back wages for unpaid overtime to Defendants' E-2 chefs. Defendants did not pay any back wages to either plaintiff.

63.    Throughout the time of Plaintiffs' employment with Defendants, numerous I-129 forms were submitted to the USCIS to extend the E-2 status of Plaintiffs. On each Form I-129, Defendants promised to pay Plaintiffs a base salary commensurate with their status as specialty cooks. Each time their E-2 status was extended, Defendants forced Plaintiffs to sign an employment contract for much less pay than promised in the Form I-129 and only offered guaranteed overtime to make up the difference.

**Plaintiffs Overcome Defendants' Improper Actions and Obtain Green Card Status**

64.    Defendants intentionally and maliciously derailed Plaintiffs' green card applications and caused a 10-year delay in Plaintiffs' legitimate path to becoming lawful permanent residents. Defendants benefited financially during this 10-year delay.

65.    During this 10-year delay, Defendants required Plaintiffs to keep renewing employment contracts with clauses that took away all other legal basis for Plaintiffs to remain in the United States; eliminated Plaintiffs' access to the courts and administrative agencies; nullified the common law precept that any ambiguous contract term should be construed against

the party that drafted the contract; restricted Plaintiffs to work for *Typhoon!* only and for no other employers in the United States; and required Plaintiffs to return to Thailand immediately should Defendants decide not to renew Plaintiffs' contracts.

66.    Before the USCIS approved Plaintiffs' I-485 green card applications on April 23, 2010, Plaintiffs had little or no options other than to work for *Typhoon!* or to return to Thailand immediately with their two U.S.-born children.

### FIRST CLAIM FOR RELIEF
### (National Origin/Race Discrimination)

67.    Plaintiffs reallege paragraphs 1 through 66 above.

68    Starting in 1998, Defendants Steve Kline, Bo Kline, and *Typhoon!* entered into a discriminatory employment and coercive course of dealing with the plaintiffs, in material part, because of the plaintiffs' national origin and race. Until Plaintiffs' unlawful discharge in 2010, Defendants' were in continuing violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), and ORS 659A.030(1).

69.    At all material times, Defendants *Typhoon!*, Bo Kline, Steve Kline, the Estate of Stephen Edward Kline, and each of them, discriminated against Plaintiffs, and each of them, in their terms, conditions, and privileges (benefits and compensation) of employment and in discharging Plaintiffs from employment because of Plaintiffs' national origin and race.

70.    As a result of *Typhoon!*'s intentional and unlawful employment discrimination and continuing violations because of Plaintiffs' national origin and race, Plaintiffs suffered lost past earnings, including fringe benefits and overtime premium wages, from the dates of Plaintiffs' discharge, with each unpaid increment thereof to accrue interest at the statutory rate from the date initially due until paid.

71.    As a result of Defendants' intentional and unlawful employment discrimination and continuing violations because of national origin and race, *Typhoon!* wrongfully interfered with Plaintiffs' green card applications, causing Plaintiffs to incur reasonable and necessary attorney's fees of $85,000 to restore their denied green card applications to pending status and to yield the approvals that followed.

72.    As a result of Defendants, and each of their unlawful discrimination and continuing violations because of Plaintiffs' national origin and race, Plaintiffs have suffered and endured painful humiliation, anger, regret, and a painful sense of betrayal and disappointment, all to their general, non-economic damages that are subject to recovery for damage pursuant to 42 USC § 1981, and ORS 659A.885(3)(a).

73.    Plaintiffs are entitled to recover a reasonable attorney's fees, reasonable expert evidence fees, and costs pursuant to 42 USC § 1988, 42 U.S.C. § 2000e-5(k), and ORS 659A.885(1).

74.    Plaintiffs have exhausted all administrative remedies, and have timely filed this complaint.

## SECOND CLAIM FOR RELIEF
### (Aiding and Abetting)

75.    Plaintiffs reallege paragraphs 1 to 74 above.

76.    Aider/Abettor Defendants Steve Kline and Bo Kline were personally and directly involved in hiring both plaintiffs and in directing all operations for all of the *Typhoon!* business entities. Steve and Bo Kline both executed the discriminatory employment contracts that Plaintiffs and other Thai E-2 visa workers were required to sign with unfair, onerous terms that did not arise from Plaintiffs' E-2 immigration status.

77.     Pursuant to ORS 659A.030(1)(g), Aider/Abettor Defendants Bo and Steve Kline, the Estate of Stephen Edward Kline, and each of them, should be held individually liable for Defendants' unlawful employment discrimination practices that are prohibited by Oregon law under ORS Chapter 659A.

### THIRD CLAIM FOR RELIEF
#### (Wage and Hour Violations)

78.     Plaintiffs reallege paragraphs 1 to 77 above.

79.     At all material times, Plaintiffs relied upon Defendants' misrepresentations because of their special relationship with Defendants. As a result of their reliance, Defendants breached their fiduciary duties to Plaintiffs and violated federal and state wage and hour laws by:

a.     requiring the plaintiffs to work an average of 19.5 hours of overtime each work week without proper overtime compensation;

b.     misclassifying the plaintiffs by adding fancy job titles to avoid paying them hourly overtime wage premium;

c.     using annual basic rate of pay for a 40-hour workweek to keep the plaintiffs qualified as highly specialized E-2 essential employees, while continuing to reduce the basic hourly wage rate and requiring mandatory overtime hours;

d.     eliminating earned vacation benefits based on years of service; and

e.     causing Plaintiffs, and other similarly employed Thai E-2 visa workers, to work off-the-clock by understaffing the kitchen, expecting work that cannot be completed within the paid hours to be done, cancelling or not renewing contracts for Thai E-2 visa workers who do not get the job done, and sending such workers back to Thailand immediately.

80.    Pursuant to 29 U.S.C. § 207 and ORS 653.261 and under the willful violation provision in 29 U.S.C. § 255(a), Plaintiffs are entitled to unpaid wages.

81.    Plaintiffs should also be awarded prejudgment interest accrued from the time each overtime payment.

82.    Pursuant to 29 USC § 216(b), Plaintiffs should be awarded liquidated damages equivalent to the amount of wages owed.

83.    Pursuant to ORS 653.055 and ORS 652.150, Plaintiffs should be awarded a civil penalty in the maximum amounts mandated by ORS 652.150.

84.    Pursuant to 29 USC § 216(b) and ORS 653.055, Plaintiffs should be awarded attorney fees and litigation expenses/costs incurred herein.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

85.    Plaintiffs reallege paragraphs 1 to 84 above.

86.    Defendants Steve and Bo Kline breached the implied covenant of good faith and fair dealing with Plaintiffs. Steve and Bo Kline hired Maha and Nuan Treemeth in 1998 because of Plaintiffs' professional training and experience as Thai chefs at five-star restaurants and luxury hotel resorts in Thailand and internationally. Between 1998 and 2010, Plaintiffs conferred a benefit on Defendants by providing services as highly-skilled Thai chefs. Defendants knew the benefits it received from Plaintiffs. Defendants continued to receive the benefits of Plaintiffs' unique and proven expertise in preparing gourmet Thai cuisine by renewing the visa status of both Plaintiffs as E-2 essential employees.

87.    Pursuant to their E-2 status as essential employees, Plaintiffs were to be compensated at the level that their special expertise can command. Instead, Defendants Bo and

Steve Kline paid Plaintiffs far less than the actual value of their services as highly-trained Thai cooks.

88.    At all material times, Plaintiffs relied upon Defendants' misrepresentations because of their special relationship with Defendants. As a result of Plaintiffs' reliance on this special relationship, Defendants breached their agreement as stated on the E-2 visas in that Defendants:

        a.    employed the plaintiffs at an annual rate of pay that was substantially below the annual rate of pay that similarly-skilled and experienced chefs would have received from other employers in the United States;

        b.    employed Plaintiffs at an annual rate of pay based upon a 40-hour workweek, while requiring the plaintiffs to work an average of an additional 19.5 hours of work per workweek without any hourly compensation at all;

        c.    failed altogether to pay to Plaintiffs the overtime hourly wage premium required by 29 U.S.C. § 207(a)(1) and ORS 653.261; and

        d.    Failed to pay Plaintiffs the amount promised under the E-2 visas.

89.    Plaintiffs should be awarded the difference between what they would have earned as experienced chefs, including overtime hours worked, and what Defendants actually paid Plaintiffs.

90.    Plaintiffs should also be awarded prejudgment interest accrued from the time each underpayment of wage occurred.

### FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

91.    Plaintiffs reallege paragraphs 1 to 90 above.

92.     Defendants Steve and Bo Kline breached the implied covenant of good faith and fair dealing with Plaintiffs. Steve and Bo Kline hired Maha and Nuan Treemeth in 1998 because of Plaintiffs' professional training and experience as Thai chefs at five-star restaurants and luxury hotel resorts in Thailand and internationally. Between 1998 and 2010, Plaintiffs conferred a benefit on Defendants by providing services as highly-skilled Thai chefs. Defendants knew the benefits it received from Plaintiffs. Defendants continued to receive the benefits of Plaintiffs' unique and proven expertise in preparing gourmet Thai cuisine by renewing the visa status of both Plaintiffs as E-2 essential employees.

93.     Pursuant to their E-2 status as essential employees, Plaintiffs were to be compensated at the level that their special expertise can command. Instead, Defendants Bo and Steve Kline paid Nuan and Maha Treemeth far less than the actual value of their services as highly-trained Thai cooks.

94.     At all material times, Plaintiffs relied upon Defendants' misrepresentations because of their special relationship with Defendants. As a result of Plaintiffs' reliance on this special relationship, Defendants breached their agreement as stated on the E-2 visas in that Defendants:

    a.     employed the plaintiffs at an annual rate of pay that was substantially below the annual rate of pay that similarly-skilled and experienced chefs would have received from other employers in the United States;

    b.     employed Plaintiffs at an annual rate of pay based upon a 40-hour workweek, while requiring the plaintiffs to work an average of an additional 19.5 hours of work per workweek without any hourly compensation at all;

      c.        failed altogether to pay to Plaintiffs the overtime hourly wage premium required by 29 U.S.C. § 207(a)(1) and ORS 653.261; and

      d.        failed to pay Plaintiffs the amount promised under the E-2 visas.

95.     In order to prevent Defendants from being unjustly enriched by not paying for the benefits they received from Plaintiffs from 1998 to 2010, the plaintiffs should be awarded the difference between what they would have earned as experienced chefs, including overtime hours worked, and what Defendants actually paid Plaintiffs.

96.     Plaintiffs should also be awarded prejudgment interest accrued from the time each underpayment of wage occurred.

### SIXTH CLAIM FOR RELIEF
### (Forced Labor)

97.     Plaintiffs reallege paragraphs 1 to 96 above.

98.     At all material times, Defendants knew and fully understood that Plaintiffs—who spent 12 years working for *Typhoon!*, applied for permanent resident status, purchased a home in the U.S., and have two U.S.-born children—established a life in the United States and did not wish to return to Thailand.

99.     At all material times, Defendants knew and understood that because of Defendants' coercive contracts, for Plaintiffs to remain in the United States with their two U.S. citizen children, they had no choice but to work for Defendants. Were Plaintiffs to stop working for *Typhoon!*, and leave the United States immediately, as required under Defendants' contracts, Plaintiffs would have to take their two U.S. citizen children back to Thailand with them.

100.    Defendants Bo Kline and Steve Kline continued to lie by telling Plaintiffs and other similarly employed Thai E-2 visa workers they must sign Defendants' employment contracts to comply with U.S. immigration and Thai labor law. These representations were false

in fact, known to be false by the defendants at the time of their utterance by the defendants, made as an abuse or threatened abuse of law or legal process "to exert pressure" on the Plaintiffs, and to cause Plaintiffs to work for *Typhoon!* only and for no other employers in the United States.

101.   Defendants Bo and Steve Kline's abuse or threatened abuse of law or legal process against the plaintiffs were violations under 18 U.S.C. §§ 1589(a)(3) and 1589(c)(1) against forced labor.

102.   Plaintiffs are entitled to recover damages and reasonable attorney fees under 18 U.S.C. § 1595. Plaintiffs are also entitled to recover special and general damages, including damages for emotional distress and reasonable attorney fees.

## SEVENTH CLAIM FOR RELIEF
### (Involuntary Servitude)

103.   Plaintiffs reallege paragraphs 1 to 102 above.

104.   At all material times, Defendants knew and fully understood that Plaintiffs—who spent 12 years working for *Typhoon!*, applied for permanent resident status, purchased a home in the U.S., and have two U.S.-born children—established a life in the United States and did not wish to return to Thailand.

105.   At all material times, Defendants knew and understood that because of Defendants' coercive contracts, for Plaintiffs to remain in the United States with their two U.S. citizen children, they had no choice but to work for Defendants. Were Plaintiffs to stop working for *Typhoon!*, and leave the United States immediately, as required under Defendants' contracts, Plaintiffs would have to take their two U.S. citizen children back to Thailand with them.

106.   Defendants Bo Kline and Steve Kline continued to lie by telling Plaintiffs and other similarly employed Thai E-2 visa workers they must sign Defendants' employment contracts to comply with U.S. immigration and Thai labor law. These representations were false

in fact, known to be false by the defendants at the time of their utterance by the defendants, made as an abuse or threatened abuse of law or legal process "to exert pressure" on the Plaintiffs, and to cause Plaintiffs to work for *Typhoon!* only and for no other employers in the United States.

107.   Defendants Bo and Steve Kline's abuse or threatened abuse of law or legal process against the plaintiffs were violations under ORS 162.263(1)(a) for involuntary servitude in the second degree.

108.   Plaintiffs are entitled to recover damages and reasonable attorney fees under ORS § 30.867 as well as special and general damages, including damages for emotional distress.

## EIGHTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

109.   Plaintiffs reallege paragraphs 1 to 108 above.

110.   Defendants' actions as described above were intentional.

111.   Defendants' treatment of Plaintiffs caused severe and prolonged mental suffering and anguish of both plaintiffs.

112.   Defendants' knew or should have known that their actions would result in Plaintiffs' suffering.

113.   Defendants' conduct arises to the level of extraordinary transgression of socially tolerable behavior.

114.   Plaintiffs are entitled to economic damages in an amount to be proven at trial.

115.   Plaintiffs are entitled to noneconomic damages in an amount to be proven at trial.

## DAMAGES

WHEREFORE, Plaintiffs pray for judgment against Defendants *Typhoon!, Inc.*, *Typhoon!, on Broadway, LLC.*, *Typhoon!, Beaverton, LLC.*, Bo Kline, and the Estate of Stephen Edward Kline, jointly and severally, as follows:

**For Nuan Treemeth:**

1.    $300,000 as and for lost past earnings, plus prejudgment interest, since May 20, 2010, as to all defendants, for wrongful discharge based on national origin and race, and for violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), and ORS 659A.030(1).

2.    $500,000 as and for noneconomic damages, as to all defendants, for violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), and ORS 659A.030(1).

3.    $100,000 as and for unpaid overtime and penalty wages, plus prejudgment interest, for violation of 29 U.S.C. § 207(a)(1) and ORS 653.26; and for willful violation pursuant to 29 U.S.C. § 255(a).

4.    $200,000 as and for liquidated damages by doubling the lost wages award pursuant to 29 U.S.C. § 216(b).

5.    $400,000, plus accrued statutory interest rate, as and for breach of implied contract and for underpayment of wages with interest (from 2006 to 2010).

6.    $300,000, plus accrued statutory interest rate, as and for economic damages and underpayment of wages (from 2002 to 2010), as to all defendants, for forced labor pursuant to 18 U.S.C. § 1595 and for involuntary servitude in the second degree pursuant to ORS 30.867.

7.    At least $500,000 as and for noneconomic damages, as to all defendants, pursuant to ORS 30.867.

**For Maha Treemeth:**

8.    At least $300,000 for lost past earnings, plus prejudgment interest, since August 26, 2010, as to all defendants, for wrongful discharge based on national origin and race, pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), and ORS 659A.030(1).

9.      $500,000 as and for noneconomic damages, as to all defendants, for violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2(a), and ORS 659A.030(1).

10.     $100,000 for unpaid straight-time, overtime, and penalty wages, plus prejudgment interest, for violation of 29 U.S.C. § 207(a)(1) and ORS 653.261; and for willful violation pursuant to 29 U.S.C. § 255(a).

11.     $200,000 for liquidated damages by doubling the lost wages award pursuant to 29 U.S.C. § 216(b).

12.     $400,000, plus accrued statutory interest rate, as and for breach of implied contract and for underpayment of wages with interest (from 2006 to 2010).

13.     $500,000, plus accrued statutory interest rate, as and for economic damages and underpayment of wages with interest (from 2002 to 2010), as to all defendants, for forced labor pursuant to 18 U.S.C. § 1595 and for involuntary servitude in the second degree pursuant to ORS 30.867.

14.     $500,000 as and for noneconomic damages, as to all defendants, pursuant to 18 U.S.C. § 1595 and ORS 30.867.

**For Nuan Treemeth and Maha Treemeth:**

15.     $85,000 as and for reasonable and necessary attorney's fees, plus cost, against all defendants, for restoring Plaintiffs' denied green card applications to pending status and obtaining the approvals that followed.

16.     Reasonable attorney fees, expert witness fees, and costs, as to all defendants, for unlawful national origin and race discrimination pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), ORS 659A.885(2), and ORS 20.107.

17.     Reasonable attorney fees and litigation expenses/costs for wage and hour violations pursuant to 29 U.S.C. § 216(b) and ORS 653.055(4).

18.     Reasonable attorney fees, expert witness fees, and costs, as to all defendants, for forced labor and involuntary servitude of the second degree, pursuant to 18 U.S.C. § 1595 and ORS 30.867.

19.     All amounts awarded to be augmented by accrued statutory interest.

20.     Grant such other and further relief as the court deems just.

Dated this 17th day of May, 2012.

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

_____
**Anne D. Foster, OSB No. 993152**
Telephone: (503) 224-6440
Attorney for Plaintiffs